UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SARAH M. ROONEY, | ) | |
|       Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-30163-MAP |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
|       Defendant | ) | |

REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S
MOTION TO REVERSE AND DEFENDANT'S
MOTIONS TO AFFIRM (Document Nos. 12 and 14)
September 2, 2010

NEIMAN, U.S.M.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 1382c(3)(A) and to Child's Insurance Disability Benefits ("CIDB") pursuant to 42 U.S.C. §§ 402(d)(1), 423(d)(1), and 20 C.F.R. § 404.350. Sarah Rooney ("Plaintiff") asserts that the Commissioner's decision denying her such benefits -- memorialized in an April 29, 2009 decision of an administrative law judge -- is in error. She has filed a motion to reverse and the Commissioner, in turn, has moved to affirm.

The parties' motions have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court will recommend that Plaintiff's motion be denied and that the Commissioner's

motion be allowed.

## I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence.  *See* 42 U.S.C. §§ 405(g) and 1383(c)(3).  Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion.  *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).  The Supreme Court has defined substantial evidence as "more than a mere scintilla."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts.  *Rodriguez*, 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987).  A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim.  *See Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing."  42 U.S.C. § 405(g).

II. BACKGROUND

Plaintiff, born in 1987, is a high school graduate and the mother of a young daughter. Her work experience consists solely of two months as a kitchen assistant when she was fourteen years old. She has a history of various medical problems and claims to suffer from an extensive list of physical and mental impairments, including painful musculo-skeletal conditions in her back, knee, shoulder and neck, as well as stomach pain and nausea, obesity, asthma, muscle spasms, depression, anxiety, urological problems, and the side effects of medication, including drowsiness. She applied for SSI disability benefits on September 9, 2006, and CIDB on November 10, 2006, alleging disability since January 1, 2004.

A. Medical History: Physical

On May 21, 1999, Plaintiff was diagnosed with a right shoulder separation by Dr. Hugh Roberts at Greenfield Pediatrics after being hit with a softball. (A.R. at 268.) Plaintiff reported shoulder pain again on March 22, 2000, including shooting pain in her back (A.R. at 274), and on November 3, 2003, she reported "extreme back pain" and requested an MRI (A.R. at 291). On July 12, 2006, Plaintiff underwent breast reduction surgery at Baystate Medical Center to alleviate continuing back pain. (A.R. at 344, 345.)

On February 11, 2008, Plaintiff visited the emergency room at Baystate Franklin Medical Center reporting shoulder pain after rolling over in bed. (A.R. at 631.) Dr. Dennis Owens, an orthopedic surgeon, opined that Plaintiff had a "pseudosubluxation" but no dislocation. (*Id.*) Plaintiff also continued to have back pain after the breast

reduction surgery, although the pain had shifted to her mid and low back. (A.R. at 511.) She received chiropractic treatment at Multimed Center, Inc. in March of 2008 and progress notes from the Family Practice at the Greenfield Health Center, dated March 27, 2008, indicate that Plaintiff was "severely restricted in her activities by her pain, which has yet to be diagnosed." (A.R. at 497.)

Medical evidence of Plaintiff's knee pain includes a January 2, 2007 diagnosis of patellar femoral syndrome with stiffness by Daniellle Campbell, M.S.P.T. of Orthopedic Physical Therapy. (A.R. at 372.) Three days later, Plaintiff was experiencing decreasing symptoms and was "able to go for short walks with minimal to no pain." (A.R. at 373.) The following month, however, Plaintiff was experiencing increased pain and had problems walking, standing, going up stairs, and getting out of chairs. (A.R. at 373, 377.)

Plaintiff was in a car accident on June 18, 2008, and claims to have had problems with her left side ever since. (A.R. at 560, 43.) Chiropractic records from the summer of 2008 showed continued acute symptoms of back and neck pain. (A.R. at 532.) On September 23, 2008, Plaintiff reported severe low back pain and issues with her knees, hips, and shoulders to a physician's assistant, Kathleen Smith, at the Greenfield Health Center. (A.R. at 493.) On November 13, 2008, Plaintiff reported that she was dropping things and was worried about carrying her child. (A.R. at 491.)

On December 15, 2008, at the request of her primary care physician, Dr. Marguerite C. Gump, Plaintiff was evaluated by Dr. Carol Zimmerman at Baystate Neurology. Dr. Zimmerman found point tenderness in Plaintiff's back and spine and

"left-sided paresthesias about the arm and leg with associated low back pain of unclear etiology." (A.R. at 507.)  Several medical examinations in the record describe Plaintiff as obese or show body mass index scores, or height and weight measurements, that place her in the obesity range.  (A.R. at 344, 360, 489, 483-94, 495, 498, 500, 505.)

B.  Medical History: Psychological

Plaintiff and her mother underwent family counseling from September through November of 2001.  (A.R. 405-11, 418, 21.)  At that time, John Kaladin, a social worker, diagnosed Plaintiff with an adjustment disorder, but found no mental functional limitations.  (A.R. at 420-21.)  Counseling goals were soon attained and treatment was terminated.  (A.R. at 405-06.)

Many years later, in an evaluation dated March 27, 2008, Kathleen Smith, the physician's assistant at the Greenfield Health Center, noted that Plaintiff was depressed.  (A.R. at 499.)  An evaluation at Baystate Neurology in December of 2008, however, revealed no functional limitations in Plaintiff's mental capacities. (A.R. 506-07.)  Finally, in a letter dated April 9, 2009, Dr. Sara Steingiser, a psychologist, reported that Plaintiff had been attending weekly psychotherapy sessions since March of 2009 for anxiety and depression.  (A.R. at 650.)  She reported that Plaintiff was experiencing problems with relationships, sleeping, and eating.  (*Id.*)

C.  Administrative Proceedings

Plaintiff's applications for SSI disability benefits and CIDB -- alleging January 1, 2004, as the onset date of her disability (A.R. 182) -- were denied on November 29, 2006 (A.R. 74).  A federal reviewing official affirmed the denial on June 9, 2007 (A.R.

at 76), whereupon Plaintiff requested a hearing before an administrative law judge (A.R. at 90). The hearing was held on April 9, 2009, at which both Plaintiff and a vocational expert testified. (A.R. at 21.)

In a decision dated April 29, 2009, the administrative law judge (hereinafter "ALJ") found that Plaintiff was not disabled. (A.R. at 21). The Commissioner's Decision Review Board ("DRB") selected the decision for review and indicated that it had ninety days to act on the claim. On August 5, 2009, the DRB issued a Notice of Decision stating that it did not complete its review of the claim during the time allowed, thereby making the ALJ's decision final for present purposes.

### III. DISCUSSION

An individual is entitled to CIDB if, among other things, she is the child of an insured person and has a disability which began prior to her reaching twenty-two years of age. *See* 42 U.S.C. §§ 402(d)(1), 423(d)(1); 20 C.F.R. § 404.350. Entitlement to SSI disability benefits similarly requires a showing of disability, as well as of financial need. *See* 42 U.S.C. § 1381a. At issue in the present matter is whether Plaintiff ever met the definition of disability for these two programs.

A. Disability Standard and the ALJ's Decision

The Social Security Act (the "Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). *See also* 42 U.S.C. § 1382c(a)(3)(A) (similar). An individual is considered disabled under the Act

> only if [her] physical and mental impairment or impairments
> are of such severity that [s]he is not only unable to do [her]
> previous work but cannot, considering [her] age, education,
> and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate
> area in which [s]he lives, or whether a specific job vacancy
> exists for [her], or whether [s]he would be hired if [s]he
> applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If [s]he is, the
> claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment? A
> "severe impairment" means an impairment "which
> significantly limits the claimant's physical or mental capacity
> to perform basic work-related functions." If [s]he does not
> have an impairment of at least this degree of severity, [s]he
> is automatically not disabled.
>
> Third, does the claimant have an impairment equivalent to a
> specific list of impairments in the regulations' Appendix 1? If
> the claimant has an impairment of so serious a degree of
> severity, the claimant is automatically found disabled.
>
> . . . .
>
> Fourth . . . does the claimant's impairment prevent [her] from
> performing work of the sort [s]he has done in the past? If
> not, [s]he is not disabled. If so, the agency asks the fifth
> question.
>
> Fifth, does the claimant's impairment prevent [her] from
> performing other work of the sort found in the economy? If
> so [s]he is disabled; if not [s]he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions: Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability (question 1); she has the following severe impairments, obesity, bursitis in the left hip, and scoliosis (question 2), but those impairments do not meet or medically equal one of the listed impairments in Appendix 1 (question 3); she has no past relevant work (question 4) but is able to perform a significant number of jobs in the national economy, including dining room attendant, usher, and cashier (question 5). (A.R. at 23-28.)  As a result, the ALJ concluded that Plaintiff does not suffer from a disability for SSI or CIDB purposes.  (A.R. at 29.)

B. Plaintiff's Challenge to the ALJ's Decision

In support of her motion, Plaintiff argues that the ALJ's step 2 analysis was flawed in two specific ways.  First, Plaintiff asserts that the ALJ did not find her anxiety, depression, urological problems, and shoulder and knee pain to be severe impairments despite their meeting the applicable standards.  Second, Plaintiff asserts that the ALJ did not sufficiently analyze the effects of obesity on her claimed impairments.  Finally and more generally, Plaintiff argues that the ALJ's decision was not based on substantial evidence.  The court will address each argument in turn.

    1. Severity Determination

In order to be deemed "severe" at the second step of the five-step protocol, an impairment must meet three basic criteria.  First, the impairment must be established by the claimant through objective medical evidence from acceptable medical sources.  *See*

20 C.F.R. §§ 404.1508, 404.1512, 404.1513(a), 416.908, 416.912, 416.913(a). Second, the claimant must show that the impairment has more than a minimal effect on her physical or mental ability to do basic work activities.  *See Munoz v. Sec'y of Health & Human Servs.*, 788 F.2d 822, 823 (1st Cir. 1986); 20 C.F.R. § 404.1520(c); Social Secuirty Ruling ("SSR") 85-28.  And third, the impairment must be shown to have lasted or be expected to last for a period of twelve continuous months.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909.  As the Commissioner acknowledges, the severity determination in a *de minimis* test intended to weed out clearly unmeritorious claims.  *See McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1122 (1st Cir. 1986).  Nonetheless, the claimant always has the burden of providing medical evidence demonstrating the severity of her condition.  *Id.*

Here, as indicated, the ALJ found Plaintiff's obesity, bursitis in her left hip and scoleosis to be severe.  Plaintiff claims, however, that her depression, anxiety, urological problems, and shoulder and knee pain should have been found severe as well.  The court disagrees.

As for Plaintiff's claimed psychological impairments (depression and anxiety), the ALJ pointed to the lack of evidence in the medical record that these asserted problems imposed any functional limitations that would interfere with Plaintiff's ability to work. Granted, Plaintiff, as a fourteen year old, underwent family counseling with her mother, but this came to a successful conclusion years before the alleged onset date of

her disability, January 1, 2004.[1] In addition, the medical record shows that Plaintiff resumed therapy only one month prior to the hearing, was taking no medication to relieve her condition, and was described only as having some symptoms of anxiety and depression. *Cf. Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (viewing gaps in medical treatment as evidence that claimant's pain was not as severe as alleged). Accordingly, the court believes that the ALJ committed no step 2 error with regard to Plaintiff's claimed psychological impairments and, hence, turns to her alleged physical impairments.

As Plaintiff asserts, the ALJ did not mention Plaintiff's urological problem or shoulder and knee pain in his step 2 analysis, although he did address these ailments at step 4 when determining Plaintiff's residual functional capacity. Nonetheless, there was scant medical evidence for these particular ailments in the record. The only mention of Plaintiff's urological problem was her one-time claim of "urinary urgency" and the need to use incontinence pads. Similarly, there was no medical evidence of any functional limitations resulting from Plaintiff's shoulder problem or that it lasted for a sustained period. She did visit an emergency room during the relevant period in February of 2008 for evaluation of her shoulder, but there is no indication that the condition significantly limited her ability to perform work activities.

Finally, Plaintiff's knee problem is not well-established in the medical record.

---

[1] Plaintiff could not be eligible for CIDB benefits until May 2005 when she turned eighteen. *See* 20 C.F.R. § 404.350. Her potential eligibility for SSI was October, 2006, the month after the month in which she filed her application. *See* 20 C.F.R. § 416.330, 416.335.

The initial diagnosis, patellar femoral syndrome with stiffness, revealed no internal knee disease and was noted in physical therapy notes which span a period of less than one month, during which time Plaintiff missed four out of seven sessions. *Cf. Tsarelka v. Sec'y of Health & Human Servs.*, 842 F.2d 529, 534 (1st Cir. 1988) ("Implicit in a finding of disability is a determination that existing treatment alternatives would not restore a claimant's ability to work."). In sum, the court finds no fault with the ALJ's ommission of these various ailments from his finding of severity.

    2. Obesity

Plaintiff also claims that the ALJ failed to articulate at step 2 of the protocol the degree to which her obesity compounded the effects of her other impairments. However, as the Commissioner argues, this failure, if failure it was, was harmless because implicit in his finding that Plaintiff's obesity was severe was the fact that it had more than a minimal effect on her ability to do basic work activities. *See* SSR 02-01P (2002) (obesity will be deemed a severe impairment "where alone of in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities").

In any event, the court believes that the ALJ fulfilled his analytical obligations. He found obesity to be one of Plaintiff's three severe impairments and cited Plaintiff's obesity along with her other physical impairments when analyzing her residual functional capacity. He also considered Plaintiff's exertional and postural limitations that were reasonably related to the combined effects of her obesity and other impairments. *See Keefe v. Astrue*, 2009 WL 5216059, at *4 n.2 (D. Me. Dec. 29, 2009)

(inferring from the administrative law judge's finding of residual functional capacity that the credited physical limitations were responsive to the claimant's obesity).  In short, the court finds no reason to conclude that the ALJ made a factual or legal error in this regard.

### 3. Substantial Evidence

Plaintiff's final argument is that the ALJ's decision with regard to her residual functional capacity was is not based on substantial evidence.  The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could not perform more than occasional climbing of ramps and stairs and would need to avoid ladders, heights, and hazards such as moving machinery.  The ALJ also found that Plaintiff must avoid concentrated exposure to fumes, dust, smoke, chemicals, and gases, as well as extreme cold temperatures.  Given the vocational expert's testimony that there existed a substantial number of jobs in the national economy that Plaintiff could perform, the ALJ found Plaintiff not disabled for purposes of either SSI or CIDB.

In pursuing her substantial evidence argument, Plaintiff first repeats her assertion that the ALJ's failure to find several impairments "severe" indicates that he failed to properly consider them in his residual functional capacity assessment.  For the reasons described, the court finds this argument unpersuasive.  Most notably, the ALJ was not presented with sufficient objective medical evidence of these impairments from valid medical sources.   And, as described, the ALJ nevertheless considered these additional impairments when analyzing Plaintiff's residual functional capacity.

12

Plaintiff perseveres, asserting that the ALJ, relying on selective portions of the evidence, failed to properly credit her testimony regarding the limitations imposed by various impairments. Unfortunately for Plaintiff's cause, the court again disagrees.

An administrative law judge is responsible for determining a claimant's residual functional capacity based on the relevant evidence provided. *See* 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946. As part of that evidence, the administrative law judge must consider a claimant's subjective allegations of pain and functional limitations, although he is not required to accept those allegations at face value and may reject them where they are unsupported by the medical evidence, treatment history, and activities of daily living. *See Frustaglia v. Sec'y of Health & HumanServs.*, 829 F.2d 192, 194-95 (1st Cir. 1987); *Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19, 22-23 (1st Cir. 1986); *Winn v. Heckler*, 762 F.2d 180, 181 (1st Cir. 1985); 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. If an administrative law judge determines a claimant's testimony to be not credible, the judge "must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986); *see also, Larlee v. Astrue*, 694 F. Supp. 2d 80, 85 (D. Mass. 2010).

In the present case, Plaintiff, when originally applying for benefits, reported pain in her mid and low back with pain traveling down her legs to the knee. (A.R. at 199; see also A.R. at 214, 216.) She also reported some relief with medication, but a side-effect of tiredness. (*Id.*) In a functional report dated February 9, 2007, Plaintiff reported lying down most of the time, getting up only to eat and use the bathroom,

waking several times each night, requiring help doing most things, and sometimes requiring crutches for walking.  (A.R. at 218-25.)  Plaintiff also rated as "very difficult" bending, climbing steps, reaching, balancing, and focusing her eyes to read.  (A.R. at 231.)  She rated "impossible" lifting heavy objects, climbing down steps, sitting on a firm chair, and being in a room with smoke or dust.  (*Id.*)  Plaintiff testified similarly during the hearing before the ALJ.  (A.R. at 36.)  She indicated that her shoulder dislocates frequently (A.R. at 41), that she experiences constant back pain (A.R. at 46), and that she has to urinate twice every hour (A.R. at 50).  Plaintiff also testified about feeling depressed.  (A.R. at 56.)

Taking this all into account, the ALJ indicated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not found to be generally credible, as they are not supported by objective medical evidence or the claimant's activities."  (A.R. at 27.)  To be sure, Plaintiff faults this finding, arguing that it is too general to be sufficient for present purposes.  *See Bazile v. Apfel*, 113 F. Supp. 2d 181, 187 (D. Mass. 2000).  What Plaintiff fails to acknowledge, however, is that the ALJ's finding came after he explicated the entire medical record, including Plaintiff's testimony.  (See A.R. 24-27.)  Only then did he conclude that "the claimant's allegations are not reflected in or supported by the objective medical evidence or conservative treatment history" and that "no treating or examining physician has suggested she is more limited."  (A.R. at 27.)

The ALJ also pointed to two apparent contradictions between Plaintiff's description of her limitations and other evidence of record.  First, he indicated that

14

Plaintiff's claim that she could not drive was contradicted by the records of her chiropractor. The ALJ also cited Plaintiff's testimony that family members helped take care of her young child but pointed to her childcare responsibilities when her own mother was at work. To be sure, as Plaintiff now argues, her childcare abilities may have been more limited than described by the ALJ. Yet, whatever minor discrepancies there may be, the resolution of those discrepancies are best left to the ALJ, not the court. *See Rodriguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir. 1965) ("Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]."). The court sees no reason why the ALJ's credibility determination here ought not be respected.

## IV. CONCLUSION

For the foregoing reasons, the court recommends that Plaintiff's motion to reverse or remand be DENIED and that the Commissioner's motion to affirm be ALLOWED.[2]

---

[2] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

DATED: September 2, 2010

      /s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge